Case No. 14-1028NL World Color USA Corp. A wholly owned subsidiary of Quad Graphics, Inc. Petitioner v. National Labor Relations Board Mr. Holland for the petitioner Mr. Sy for the respondent Before we begin, I just wanted to thank Howard Law School very much for the kindness of allowing us to hold court today Also, for anyone who was thinking they were going to see a search and seizure Fourth Amendment case we apologize One of the lawyers got sick and went to the emergency room yesterday so that case, unfortunately, has been put off for the week from Friday where we'll be back at our regular courthouse So with no further ado I think Mr. Holland is up, is that right? Good morning May it please the court, my name is Ronald J. Holland This is my co-counsel, Ellen Bronchetti and you represent the petitioner in this matter, World Color The question before the court is what legal standard should apply to the review of a non-discriminatory company uniform or dress code rule where the board offers absolutely no evidence of discriminatory or disparate enforcement of the rule but instead seeks to find that the publication or maintenance of that rule is a Section 8A1 violation The basic facts in the case are for the most part, undisputed World Color was acquired by Quad Graphics in 2010 Prior to that time, Quad Graphics had a comprehensive company-wide uniform policy that required certain articles of clothing Prior to the acquisition of World Color Quad Graphics implemented a cap policy The cap policy is located in the safety section and the cap policy requires that if an employee is if an employee is attempting to secure their hair to their head, they may use a baseball cap If they use a baseball cap that baseball cap has to be a company cap It has to be aligned with the uniform If you look at the rule, you'll see in the safety section that there are several opportunities to secure your hair You can secure your hair any way you want You can cut it, you can use a tie, you can use a clip or you can use a baseball cap It's an optional piece of the uniform The policy is simply written Baseball caps are prohibited except for Quad Graphics caps with the bill facing forward At trial, there was no evidence of disparate enforcement How should we, counsel, how should we view the evidence in the record that at least one employee believed that the policy prohibited the attachment of any union sticker or button to the hat? His subjective belief, Your Honor, that the policy may have precluded that is denied by the other evidence in the record, the express written rules of the company There's absolutely no rule in the record that prohibits adornment of the uniform or the hat in any way Isn't that true that buttons and pins are prohibited on the production floor, that these employees are on the production floor? That's not correct, Your Honor You're referring to a separate safety rule regarding wearing jewelry and bracelets Jewelry and bracelets are prohibited when an employee is actually engaged in production activities The rule doesn't say that jewelry and bracelets are prohibited when you're on the floor Okay, let me ask you a question, Ben I'm reading from the transcript of your opening statement Page 32 says, and this is your statement to the ALJ It needs to be a company hat if you choose that method Now, the hat is a piece of clothing It's not a button or a pin Buttons and pins are prohibited on the production floor because they can fall into the pieces of equipment That is a direct quotation of yours to the ALJ Wasn't the ALJ entitled to take that representation from the company as the company's rule? Your Honor, I would say that the opening statement paraphrased the rule The rule explicitly was put into evidence as part of the employee guidelines and also as part of our exceptions brief and the rule regarding jewelry and bracelets is narrowly construed to only preclude those such items when the employee is engaged in production activities Frankly, it has no bearing on patches, right? It has no bearing on patches, Your Honor It has no bearing on stickers It has no bearing on other items that an employee would use to adorn the hat or the uniform There's absolutely no prohibition in the record or in the company policies that would prohibit adornment of the uniform You're not saying there's any evidence in the record that you could do that, right? It seems to me all of your statements are very careful about no evidence in the record in the other way Are you representing that the company's policy is such that you could stitch onto the company hat a union logo, a bigger one on top of the employer logo? Well, there are two items that I'd like to address One is there's a specific policy that because it's part of the uniform you're not permitted to cover the actual company logo What you're asking is if an employee could affix something permanently to the hat as opposed to a button or a sticker If I have to proceed that far there is a difference between I would say generally not The employee is not permitted to actually sew a patch on the shirt or the pants With regard to the hat, as your Honor knows it's an optional piece of the uniform It's an optional piece of the uniform that employees may purchase Technically, that hat is their property And so there's no limitation on what they can do with their own property other than for safety reasons So your answer is yes, they can sew a union label on the hat? I would say that that issue is not that issue is not before the court We know it's not, but answer the question I would say that there's no policy specifically permitting or specifically prohibiting the sewing of a patch on the baseball cap It's not reasonable to read the rule as requiring a hat that has only the sewn-in insignia of the company? No, it's not reasonable to read the rule that way The fact is that it requires a cap with the logo It doesn't say with only the company logo And then there's no further prohibition on what you can adorn the uniform or the hat with In fact, there's a part of the uniform policy that talks about accessorizing the uniform And so if we agree that the hat and the pants and the shirt are part of the uniform the accessorizing in good taste would allow the employee to accessorize the uniform in any way they see appropriate At least if the pictures in the joint appendix are correct the company logo occupies very little space on the hat leaving loads of space for union logos That's correct, your honor There are at least 7 or 8 types of company hats The logo is centered in the middle It's very small, as you can see from the pictures approximately 2 to 3, 2.5 to 3 inches in diameter And there is plenty of room on the front of the hat or the back of the hat to apply a union sticker to adorn the hat with union insignia or union communications to your fellow employees anywhere else other than on top of the logo I'm still a little stuck on the testimony and the rules about the jewelry Aren't the employees we're talking about here people who work on the production floor? Aren't they pressmen, isn't that right? They're pressmen So are you saying that when they're operating the press they can't wear jewelry and they can't wear a button on their hat but as soon as the press is turned off the one they're operating they can stick a button on the hat? I would say yes, your honor That's actually correct Now what I would say That's not what you told the ALJ So it may be that the ALJ misunderstood you or it may be that you overstated but why couldn't the ALJ take as a statement of fact your statement that buttons and pins are prohibited on the production floor? The ALJ took the I would say the ALJ was authorized to take the opening statement as a paraphrasing of the evidence to be submitted but the evidence that was submitted after the opening statement that came in as a specific exhibit in the record would try to be a reasonable If that's a reasonable reading Assuming that you were making a reasonable reading of your own rule which of course I would assume you would be doing Since our rule is reasonable readings by employees we have to go on that Why isn't your reading a reasonable reading of the rule? Your honor, I would say that the reasonable reading of the rule needs to focus specifically on the rule I used the term production floor in my opening statement I misspoke The specific language in the rule talks about engaged in production activities which is a much more narrow rule than what I paraphrased in the opening statement I figure they can't wear any other kind of hat Is that right? That's correct, your honor There's evidence in the record that one not only did there's no evidence that an employee attempted to wear a union hat but in one instance the government offered a witness who came in with a Green Bay Packers hat and was instructed Oh no, I don't mean that You can't wear a hat other than a baseball hat You can't wear any other kind of hat either That's correct, your honor Even though the rule only speaks about baseball hats so we know that the actual scope of the rule is broader than the express words of the rule Well, I would say that the rule, again the framework of the analysis here is the rule itself The 8A1 framework brings us back to Lafayette Park and Lutheran Village and the analysis is Is the rule as written overbroad on its face? And so to ask whether the rule itself prohibits any other type of cap I would say the rule itself as written does not Well, but we know that the rule as applied by the company says no other hats because Nancy Ott filed a declaration saying, she's her HR person that no other hats all other hats are prohibited So, um Well, actually, I mean the rule itself does that Baseball caps are prohibited Well, that's true I guess the rule explicitly is just within the universe of baseball caps and prohibits a set of baseball caps I don't mean to be technical about the reading of the rule However, the rule itself which is the one before the court is written in such a way that it specifically prohibits baseball caps It doesn't specifically prohibit It does, but the evidence in the record of your own HR person is that it bars all other hats So, the board isn't limited only to the words of the rule It's to the policy that you're applying Otherwise, we wouldn't know anything else at all That's correct, your honor I would agree with your interpretation However, I would say that the issue before the court is whether the requirement that the baseball cap be a company cap and the analysis that applies is the issue presented and the wearing of other caps is more akin to the question of can you wear other items of clothing Could you accessorize your uniform And so, again, I'd have to come back to the rule as written and say it's narrowly drafted, narrowly drawn and that the analysis that applies would be specifically focused on the wording of the rule itself The board offered no evidence of preclusion of other hats at trial It did, it put into evidence an exhibit of Ms. Ott's declaration which says no other hats That's true, at the end of trial counsel for the general counsel submitted portions of the position statement that was filed with the board earlier I don't have Ms. Ott's declaration in front of me I, of course, trust your honor's reading of it and don't dispute that What did you say about the Coca-Cola case? The Coca-Cola case, Great Plains Coca-Cola involved the prohibition of an employee wearing a union jacket and a union hat In that particular case there was no evidence of a pre-existing uniform rule or dress code I recall that only Coca-Cola jackets could be worn That's what it said So there obviously is a Coca-Cola jacket and they were told only Coca-Cola jackets can be allowed and the board said it's unlawful in the absence of special circumstances The board treats articles of clothing the same as a button This whole article of clothing and union buttons is conflated by the board If you go back to the original decision from 1988, Max Supermarkets which was issued by the ALGA at issue in this case it had to do with a situation during an election campaign where there was no uniform or dress policy at all and employees started wearing caps and in the middle of the organizing campaign a rule was issued saying no caps and Judge Cates found that the special circumstances analysis should apply because you were eliminating union insignia I'm not sure if the import of what you're saying is that they've been making mistakes since then in their own rule Coca-Cola cases from 1993 Correct, Your Honor and if I may get to that The Coca-Cola case, again has to do with the enforcement of a uniform policy by a supervisor where there's no evidence of a written, narrowly drafted uniform policy or dress code The supervisor says you can only wear a Coke uniform We don't know what that written policy looks like We don't know whether there was a rule regarding jackets We don't know whether there was a pre-existing rule regarding hats Whatever the rule was it was applied off-site It was applied off-site to that particular individual Correct, not the jackets rule The hat rule was off-site The jackets rule is under a section entitled instructions employees not to wear union insignia at the facility Correct, Your Honor and we don't know whether there was a rule that said along with the underlying uniform employees are required We don't know that but there's nothing in the case to suggest it's limited to the circumstances you're saying I appreciate you could if you were a member of the board you could distinguish this in that way but none of the reasoning of that case says anything about that Well, in fact, Member Schaumber in his dissent in the Stabilis case does exactly what I'm doing here In the dissent in the Stabilis case Member Schaumber says you can't rely on the Coca-Cola case because there's no finding of fact that there was a pre-existing uniform or dress code policy in effect at the time and so Member Schaumber in that dissent rightfully says that the special circumstances test does not apply where there's a pre-existing non-discriminatory uniform policy or dress code What he says, though, in his dissent he agrees that special circumstances are required that you have to show them where the employer has a uniform policy that prohibits employees from adding union insignia to the required attire That's what I'm reading from his dissent and he says that is okay and this is not required attire The hat is not required In fact, you say it about four times in your brief that it's optional So even under Schaumber's dissent in Stabilis you don't win But we do, Your Honor First, Stabilis doesn't apply to special circumstances test The majority doesn't The majority specifically in footnote 12 says we're not going to reach special circumstances Even though Schaumber says they do the majority itself in footnote 12 says we don't rule on this case based on special circumstances With regard to Member Schaumber's I'm having a little trouble understanding that Where is that? Footnote 12 of the majority's opinion In which case? Footnote 12? I only go up to footnote 11 in my opinion Oh, no Footnote 11 is for good dissent Yeah, sorry, go ahead Footnote 11 Footnote 12 I see Because we do not rely on the judge's reasoning in this regard But that has to do with whether there was a showing The text of the opinion of the majority says The right to wear union insignia may not be infringed absence of showing of special circumstances These protections have always extended to articles of clothing including pro-union T-shirts There's no basis in Crescent for treating clothing as categorically different And then it says an employer cannot avoid this special circumstances test simply by requiring its employees to wear uniforms or other designated clothing thereby precluding the wearing of clothing bearing union insignia Yes, Your Honor So they do seem to require No disrespect to the board but the board's analysis in Stavros is sloppy I mean, the board loosely throws around the term required special circumstances with regard to the wearing of union insignia and then takes union insignia and a T-shirt and puts them together in a set of facts that we've never seen before Schomburg points out in his dissent that the only time special circumstances has been applied by the board is in a situation where there is no pre-existing dress code or uniform policy and the employer prohibited the employee from wearing union attire or where there was such a policy and it was disparately enforced or the employer prohibited the employee from wearing a button or a pin like in Republic Aviation and a variety of the other cases that analyze pins and buttons but never before has the board said you have a pre-existing uniform policy a pre-existing dress code Even if you're right that's now twice, right? This is not Stavros We now have Stavros as a precedent and now we're four years later and we have another opinion on the subject What about the Meijer I'm not sure I'm pronouncing it M-E-I-J-E-R case Meijer Meijer case It says clearly an employer may not, absent evidence of likely disruption or endangerment prohibit the wearing of union insignia in areas not involving customer contact and that was the case where the issue was they had some jackets with union insignia in customer areas of the store That was the Sixth Circuit case where the underlying board decision if you look at the underlying board decision as opposed to the Sixth Circuit's analysis the board actually says that hats or clothing and buttons stand on completely different footing That's where the board actually flip-flops itself if you look at the underlying board decision and in the I believe it's the ALJ's finding which the board adopts they find that clothing and buttons stand on different footing and so with regard to the Meijer case the special circumstances test is enforced with regard to the wearing of union insignia but not in the face of a pre-existing enforced non-discriminatorily enforced uniform policy Gee, that's not the way I'm reading it I'm looking at the ALJ's opinion They say with respect to hats and jackets there's no violation of the NLRA to bar them in customer areas of the store but in the one instance involving a jacket with a union insignia where he's wearing it in a non-customer area you can't bar it because it can involve customer contact or other special circumstances My understanding of the Meijer case, Your Honor is it's similar to the Great Plains Coca-Cola case in that while there is a uniform while there was a uniform policy you're correct that uniform policy didn't specifically extend itself to the wearing of jackets and so special circumstances was required to require a company jacket in customer areas but outside of customer areas the special circumstances test was unavailing because it normally would be unavailing in a warehouse situation unless there was a safety reason for it but specifically in that case I don't believe that there were any findings of fact with regard to the uniform policy that it extended to the wearing of jackets Just for interest what's the reason for this hat policy? The reason for the hat policy? The reason for the hat policy is that employees there's a dual purpose policy I would say and that is one employees have a need to secure their hair to the head in a variety of reasons when they're operating a printer if they choose to do so with a cap the testimony demonstrates if they choose to do so with a cap HR made the determination prior to implementation that the cap should match the uniform that the cap should align with the uniform but the matching doesn't have anything to do with safety it has to do with aligning somehow is that right? That's correct your honor the matching doesn't have to do with safety the matching has absolutely to do with alignment of the uniform just like many companies have rules regarding personal protective equipment and what that equipment should look like whether it's a matching vest whether it's a matching hard hat one of the cases cited by the board have to do with a matching hard hat and a sticker that would go on that hat and so it's not a safety argument at all it's an aesthetics argument the argument with regards to the uniform policy is a uniform argument or an aesthetics argument the argument with regards to wearing the baseball cap to secure your hair to your head is actually I don't believe that that's the issue that presents to the court I'm sorry gentlemen the hat requiring a hat or other thing to keep your hair out of the machinery is a safety proposition it intersects with the uniform policy because when you solve the safety problem with an article of clothing and the uniform policy that's correct this is not an area where customers are coming by as a normal matter right well you know the issue on customers we presented the case as one not requiring special circumstances there's evidence in the record that customers do visit the facility as I recall it was pretty casual pretty uncommon it's based on the testimony in the record it's it is the government witnesses testified that while it's common it's not common for them to come on to the production floor I take it that if raised in proper form the company would have reasons in terms of you fill in the blank for requiring a uniform for workers very good well the fact is that the uniform is a company-wide policy well that doesn't provide a reason no your honor I'm going to give you the company is a company-wide policy there the facilities differ in a variety of ways some have a lot of customer contact some have less customer contact frankly the uniform on the record the uniform policy applies to everybody management and hourly employees the the quad blues have been around since the company originated and the only difference between the uniform of a manager and an employee would be the color of your name a manager's name is in yellow an employee's name is in white that's the only difference in the uniform in the application areas where customers don't appear the notion of morale esprit de corps it's a notion of we're all printers well you had an opportunity to put that evidence in if you wanted to right they were although you took the position you didn't have to show special circumstances that's correct you did put in whatever arguments you had on the subject we put in evidence gang colors you say you're trying to keep out gang colors yes so if you had an esprit de corps argument you could have put it in well that was for the cap policy the evidence that you're referring to had to do with the cap policy not with the overall uniform policy yes you thought that was part of esprit de corps you could have put that in because the uniform policy was specifically not at issue the government conceded that the company could implement a uniform policy on its own without more once the cap becomes part of the uniform policy once that cap becomes part of the uniform policy there's no further evidence to be offered when the government concedes that the uniform policy is lawful so if you accept that the cap is an optional piece of the uniform once you put the cap on and you choose to secure your hair in that manner with a company cap that company cap is not only a safety device but it transitions to a piece of the uniform and now fits into the company uniform policy which is not at issue so you could wear a bandana I take it instead is that right yes and it could have gang colors gang colors would be a different issue gang colors we would it would not have to be matching colors there's no rule of barring I'm a little confused about the point of this uniform if you can wear a bandana of any color that you want you can wear a clip your honor you can wear a hair tie neither of those can you see so it's nice but you can barely see that can you Christian wear a bandana your honor I don't know the answer to your question because it wasn't at issue and whether that would provide a secure way of securing your hair in a safe manner there are lots of nylon kind of caps that people wear that are quite tight over the top of the head and they specifically for the purpose of controlling hair but can be in any color you want I don't your honor I have to say I don't know the answer to that question and how the company would deal with an employee who came in wearing a skull cap as a big teen star emblem on the top that is what I'm asking I'm glad I was able to frame that up for you your honor how the company can I get out of it that's not presented before the court I think because it cuts six different ways on one hand you could argue it provides another outlet but again it seems hard to imagine a company trying to prevent people from wearing any hat other than this particular hat would allow them to wear a bandana that does everything they don't want them to do that's why it's a difficult question to answer I don't think the board has traditionally viewed this type of situation we are talking about the mere maintenance and publication of a rule we're talking about the board's position that that rule as written is a per se violation of the act the board takes the position they need not show the patron of          se violation of the act it's a per se violation of the act it's a patron of the rule of the act     violation    a patron of the act it's a patron of the rule of the act it's a patron of the act per  violation     the act it's a patron of the  it's a patron of the act per se you can say very easily an employer has a right to establish a uniform policy the question is can you put a button on it and the prohibition of putting a button on it is where the board's analysis centers frankly if you look at the target case the target case was a case where there was a uniform policy all buttons at any time anywhere non-work work time any facility throughout the country there the board applied the special circumstances to whether an employee needed whether it was proper to have an employee remove a particular button however in actually reviewing the rule the board applied the Lutheran village test that same analysis applied in the Medco decision in the underlying Medco decision that was enforced in part and denied in part by this circuit in 2012 the underlying board decision there reviewed the language of the policy it was a broad prescription of union speech the company enforced that policy the board analyzed the enforcement however analyzed the rule as written under the Lutheran village test in Medco the board       eliminated the proposition that it was disputed sharply disputed the board said it was undisputed there is no analysis of how you get from a rule requiring hats company hats if you choose to wear a hat at all to a prohibition of insignia on the hat that is treated as undisputed the rule required employees to wear a company hat they chose to wear a hat which on its face precludes them from wearing a union hat it doesn't preclude them from wearing a company hat with union insignia there is simply no evidence that the employees could have attached any other insignia to the hat is there any evidence that they were barred from attaching union insignia your honor before the board the company had introduced no evidence to indicate that let's just look at the evidence of the rule okay does the rule say anything about insignia your honor the rule does not specifically state so I mean if I rent a car I'm not supposed to or an employee is supposed to drive a company car does that mean he can't attach a U.S. flag to it if you so mind it no or a union flag for that matter your honor the company at the hearing in its brief has made various arguments to other alleged insignia that possibly the employees could attach never made an argument to the board that employees could attach anything to the company it doesn't prevent them from securing advice from the board your honor the only thing that was mentioned in the company's rule is the ability to attach possibly whether or not employees could be creative and make that into a union hairnet let's talk about hats the hat policy seems to say nothing nothing about insignia your honor it doesn't need to specifically restrict the union insignia it doesn't have to say that it is recognized by the board   the  thing  was mentioned in the company's rule is the ability to attach possibly whether or not employees could be creative and make that into a union hairnet     hat      insignia your honor it doesn't have to specifically restrict the union insignia it doesn't have to say that employees could be    into a union insignia it doesn't have to specifically state that pins and buttons could not be worn it is never asserted that something can be attached to the hat as far as the union insignia it doesn't have to state that it can be  to you or to the uniform not necessarily being attached to the uniform but it does not have to be attached to the uniform and the court or the board concluded that that meant that you couldn't affix any union button to the uniform. Your Honor, there are two cases. For example, in the Albertsons case and the KSK supermarkets case, those are both cases where the employer had a policy that prohibited badges or pins from  attached to the uniform. The court concluded that badges or pins were prohibited except for a particular type of pin. So obviously that prohibits a union pin or anything that's not designated. My question  does the court have to assume that that means you can't attach a union pin to it? Your Honor, there have been a number of cases where an employer has a policy and then there's been a situation where an employee has tried to wear a  a pin to a particular union whether it be a jacket or a hat or a button and depending on particular circumstances it's been allowed or disallowed generally. Those are all discriminatory enforcement cases and this isn't a discriminatory enforcement case. Your Honor, it's a situation where there might be an application but it's still the policy itself that's called into question. It's not just that it's discriminatorily applied. It's ultimately the policy itself that's being called into question. The ability for the employer to require employees to abide before concluding that the policy is discriminatory rather than saying, well, on its face it is. Because it is quite recognized in the Garzmar case that something is spatially overbroad. It does not require a specific application. Your Honor, to break it down into explicitly overbroad and I have to say, and I think ordinary users of English wouldn't see that applicable here, or reasonably interpreted by the employee to have an overbroad meaning. And the Board never even reached that. The Board simply declared it undisputed. Correct. The Board did not view this as a Lutheran heritage case. The Board does not view this as a Lutheran heritage case where, for example, maybe there's a policy that requires employers to wear hats consistent with the company's goals and objectives. And then there would be a situation where would employees  interpret that goal. You're saying the Board did, in fact, rely on the first step laid out in court's mark. That is correct, Your Honor. Okay. And it regards a prohibition of non-company hats as explicitly barring attachment of any insignia to such hats. Is that correct? Is that a correct summary of the Board's decision here? Your Honor, I don't understand or appreciate the company's argument as ever suggesting that in requiring employer hats, that employs an option of affixing something to that. They do explicitly say that there's nothing in the policy that prevents attachment of insignia. So, but the Board says it's undisputed that attachment of insignia was barred. Your Honor, in the context     says that there's nothing in the policy that prevents attachment of insignia to the hat. Well, where do you get that? I mean, it appears to be a general declaration that there's nothing about the policy, which I think fits ordinary reading, nothing about the rule for the attachment of insignia. Your Honor, respectively, the Board simply viewed it differently. Well, but the Board, if we're in the first step of guards mark, has to point to explicit language. I don't see it. And I understand the Court's concerns. The Board simply viewed it differently than on its face, a policy that if employees choose to wear a cap, that it has to be a company cap. That's correct. That doesn't say that it's a company cap barred as any additional insignia. What about the Council's representation that insignia can't be attached on the production floor? Your Honor, if I understood, the Company Council wasn't quite clear or seemed to indicate that he didn't think that an insignia   on the production floor. Are there employees we're talking about here, people who are involved in production and that's what they do, right? That's correct. They're not like sometimes doing production and sometimes not, right? Your Honor, I don't know how their time breaks down, but as referenced in the company's brief, the company specifically states that there are legitimate policies such as no pins or buttons on the production floor. It doesn't indicate simply when machines may be running. It says no pins or buttons on the production floor that could potentially fall into equipment. Which page are you looking at now? 17, Your Honor, of the brief in support of exceptions, and it is cited in the board's brief and it's lodged in the board. So let's suppose that we were to let the board's decision stand. Could the company amend their policy by adding a sentence that says you can attach a union insignia with a sewed-on label or ironed-on label to the hat, and then the policy would be could be re-implemented? Your Honor, I can't specifically give a definitive answer because should this court enforce the board's order, it would go to compliance with the board's regional office, but arguably if there is a demonstrated viable option that in addition to whatever company insignia is required, that employees can attach an insignia to the hat, that is arguably a viable solution, but I can't state my definite certainty. Can I ask you about NLRB's law on this subject? Imagine that their rule was that in fact you could stitch a union label above, in front. I mean, they made a rule specifically says you have to have the bill of the cap in front and the company's logo is in front. And assuming there's room for a union label there, imagine they said you could either put a large union button on the front as well or stitch in a union label. I assume there would be two possible theories here. One is that's good enough and that the board's law would say that's good enough, and the other is that that's not good enough, that it's up to the employer. Which of these two propositions does NLRB law support, or is the second one not yet decided? I'm not sure that they're decided, but there are, and again, the board doesn't look at this as a uniform case, but there are four cases where an employer has a uniform policy and then there are issues about employees adding buttons or adding something to the uniform, and that can, depending on the circumstance, be lawful by adding those buttons. So the case might be different if the facts were, and it might be different in the board's view if the facts were that you could adorn your hat with a union insignia. The board doesn't pick and choose between union insignia, and obviously there were section 7 rights that underpin the act, but in uniform cases that is the balance that is made between an employer's policy that sets for certain requirements and generally an employee's ability to add something to that uniform. But the board has language suggesting that from the section 7 point of view there's no difference between insignia and jackets or shirts, and that seems to pretty much eliminate employer ability to choose the uniform, or at least to put a heavy burden on them to justify any such requirement. Your Honor, the board cases have applied special circumstances tests regardless of the type of case involved. But the special circumstances test seems very elastic. At least I haven't encountered anything where the board spells out how the special circumstances test works out. Is it a balancing test? Is it you have to meet some particular heavy burden of showing that the policy is okay? There's total obscurity on that. Your Honor, the board has set forth special circumstances can be a variety of things. It could be the type of contact. There's no overarching principle that ever seems to have been stated. Your Honor, the board's brief does cite and list at least six factors or so that the board can consider. No one is disputing in this case. The board isn't disputing that had the company set forth sufficient evidence that things like security and getting activity could have arguably been a sufficient special circumstance. It just wasn't shown in this particular case. Okay. But didn't the board also say that the result would be the same even if we accepted the argument that the cap policy is part of the uniform policy? That is correct, Your Honor. This court doesn't have to reach that alternative holding. In the board's view, the cap policy was simply not part of the uniform policy. The board may be concerned about an employer's ability to set forth a uniform policy, but this in and of itself stands alone from that, and this court doesn't need to reach that alternative holding. So you're not defending that alternative holding? Your Honor, the board's position is that the result would be the same if the  policy was part of the uniform policy, and there is substantial  support that finding. Isn't it clear as an analytical matter that the cap policy at a minimum intersects, overlaps, with the uniform policy? In other words, it is a policy with respect to clothing. It happens to be expressed in a part of the rules relating to safety, but it can't be unusual for the board to confront two sets of rules which intersect so that a classification, they must be one or they must be the other, becomes completely arbitrary. Your Honor, on the facts of this case, not only were the uniform policy and the cap policy set forth in two very distinct sections of the employee guidelines, the testimony from human resources director Ott, she acknowledged that this was done and that it was placed in the safety section because this was considered a safety issue, and when it comes to covering care... I feel the actual language of the rule, which is framed in terms of a clothing policy, right? It seems to overlap with the explicit clothing policy. Your Honor, again, all as board counsel, I can state that the board reasonably found on the evidence in this case, not just in how it's set forth in the manual from human resources director Ott's testimony... It's a matter of analysis. It's a matter of what the words mean. And, Your Honor, it's also a matter of how it even gets presented to the employees, and when it gets presented to the employees in the question and answer, it's set forth as two very distinct uniform policies regarding shirt and pants, and then there's safety policies and safety issues, one of which includes mechanisms to cover your hair, of which a hat is an optional part of      there's safety policies and safety issues, and then there's a reasonable construction of a rule that says when you're at work you have to wear company issued shirt, pants, and hats. Let's say that's all that the policy said. Why would it be a reasonable construction, or would it be a reasonable construction of that to say I can't put any kind of a pen union or otherwise on my uniform if that's all that the rule said? Your Honor, if that's all that the rule said, then that's not in this case where the company acknowledges these are production employees and they cannot add those types of things to the shirt. But I'm asking you if that's all the rule said, would it be reasonable to construe it as saying, to interpret it that you couldn't put a pen on either your hat or your shirt or your pants? I'm sorry, a pen on your hat, shirt, or pants? Not necessarily, Your Honor. That would still raise issues whether the policy itself would be lawful and whether circumstances were shown to justify those limitations with respect to a hat, a shirt, and pants. But it wouldn't necessarily on its face restrict the ability to add a button. Again, the board doesn't choose between types of protected activity. So, what about the language of the policy here? Makes it reasonable for us or an employee to construe that they could not affix a union hat? Just looking at the words of the policy. Your Honor, the words of the  that if an employee wears a hat that it needs to be a company hat with the company insignia is reasonably construed as limiting and preventing employees from wearing union hats. I'm not asking about union hats. I'm asking about the union sticker on your company hat. Why would it be reasonable for someone to conclude just from reading those words that they couldn't do that? Your Honor, on the fact that this case just in that rule, it wouldn't be reasonable  to conclude that there is evidence to indicate that employees cannot put things such as pins on hats. The choice not to put them on says nothing about the meaning of the rule. They didn't testify that they read the rule as barring insignia. Right? Your Honor, again, there's no testimony to that effect, right? Your Honor, there's one employee that the Board does acknowledge. The Board is not treating this as a Lutheran heritage case where the Board examines how employees would evaluate the rule, whether it was in response to union activity and whether there's been actual enforcement. The Board does acknowledge this is not a Lutheran heritage case.  case of union communications. So, this is the question I began asking you, which you demurred. Now, are you no longer demurring? That is, I asked, the Board might be taking the position, I frankly can't tell, but might be taking the position that a union hat is like, in whole, is like a union button. And the Board can no more tell an employee that they can't wear a union hat than they can tell an employee that they can't wear a union button unless there are special circumstances. Now, is that the Board's view? Is that your view of what they did here? Or what? Your Honor, the Board has not run any distinction between types of union insignia, whether it's a button, a hat, or a shirt, which would imply that the Board treats the insignia as having a fundamental right to wear a union button or a union shirt or a union hat as a special circumstance. A company policy saying, I mean, you seem to be saying you must wear the company uniform is invalid, even though it explicitly says attach insignia as you like. Your Honor, and that's why I indicated this Court doesn't need to reach the Board's footnote because, to my knowledge, the Board hasn't, though it has said that an employer cannot hide behind a uniform policy. In other words, it can't use a uniform policy to prohibit union insignia absent special circumstances. To my knowledge, there hasn't been a case dealing with, say, production employees. Obviously, there have been cases dealing with the public where the Board has specifically stated that an employer could not say, in a, without special circumstances, you must wear a uniform and the only kind of button you can wear is buy at Bob's. That is, assuming the employer is Bob's. Right? The Board would say, you can't have a rule that says that because that inherently bars you from having a union button, unless you are an outward-facing employee who faces the public and somehow having buy at Bob's is important, or unless there's a security problem with buttons or anything else. Right? Under those circumstances, the Board would say, you need special circumstances. Right? That's correct. Okay. And that's why my question is, is a hat the same as a button in that context? And the answer is, I mean, you can certainly recall the Coca-Cola case, the Mayer case, and the Stavlis case as saying, a piece of clothing is the same in that circumstance as a button. Now, one of the special circumstances might be that those get so big, just like a big button gets so big, that it detracts from the uniform aspect in the sense for a public-facing employee. Or maybe there's an argument like Judge Williams made about sort of a hat is a button. I don't know what the answer is. It's not like a trick question. I don't know. And I understand that it's one of those things where I wish I could give the court a perfect answer. I think it is the latter that the court, that the board, excuse me, is treating the different types of buttons and hats and shirts and insignia in certain circumstances that would allow limitations. I'm not aware of any case where there could be additions or substitutions like sewing something onto a hat here. It's not clear to me if that was fully reasonable interpretation for the board's cases where it has essentially equated all types of union insignia. Okay. Thank you. Since now you both went over almost 15 minutes, we will give you a little rebuttal. Let's start by seeing if you can just answer our questions. Maybe that's the best way to do that. Imagine that I thought that a lot does depend on whether this is disputed or undisputed about whether or not attachments could be stitched  the hat. Are you representing that if we were to send it back, we were to say there has to be fact-finding on this question, that the company would say that you can stitch things onto the hat, that these workers can put stickers on the hat, that these workers could put buttons on the hat, or what's going to happen is it's going to go back and the company is going to say, no, you can't do any of those things. Is there a representation that it would be useful in any way to send it back? Because as I said, all of your briefing is all about the absence of evidence. So, if we sent it back, you wouldn't be able to say there's an absence of evidence. If we sent it back on this theory, the board would have to take evidence about whether or not there can be these adornments. That's correct, Your Honor. If you were to say, I'm not saying if we take your view of the law, because then you win regardless. I'm saying if we thought it might make a difference to the board, whether or not there were attachments, are you telling me that you would put in evidence that you could attach things to it? Obviously, that's not evidence here, but it makes a difference about whether this is a useful thing to do or not. We would put into evidence, if it were remanded for that purpose, we would have to put in evidence regarding whether items could be attached. I will tell you from my personal experience,  never seen employees actually attempt to adorn their uniform in any sort of way. I'll put it another way. When an HR person is asked when put on the stand and asked the question, employees would like to know, because otherwise they're not going to do it right. The question would be to the head of HR or anybody else who runs this policy, before employees risk their job by putting a union adornment on their hat, they want to know if they can. Can they? Is there a prospect that the answer would be yes, or is it clear that the answer is yes? I would testify that compliant with federal law, that employees could attach items to their uniform, including the hat. She would testify... When you say compliant with federal law, you mean compliant with your view that they can't put that on? No, that's not my view, Your Honor. I don't mean you personally. I understand, and obviously she wouldn't say compliant with federal law, unless I prepped her really well. She would say yes, of course, you can adorn the uniform, and if general counsel would say, well, are there restrictions on the adornment of the uniform, she would get into, this is a printing company, and there's no   adornment of the uniform. So, in other words, she might say that you can put a sticker, I'm not sure why a sticker is any better than a button from the safety point of view. If that falls in the machine, that's not good either. I understand. So, she might say that a sticker or a stitched insignia would be okay? Can we break these down into permanently affixing something to the hat and attaching a button or a sticker? There's a distinct difference. Since we're discussing it, if you look at UPS or UPS uniform, they have a relationship with the teamsters where they've agreed to allow them to literally stitch a patch on company-owned uniforms. If you're asking would Ms. Ott agree that you can stitch a patch of whatever you like onto your company uniform, I'm not sure she would agree that you could permanently affix such a patch on your company uniform. It alters the nature or the character of the uniform. If you asked her could you affix a removable item to your uniform, we're talking about the uniform, the lower half, not the upper half right now, a button or a sticker or some other item, I'm certain that she would say yes, you could, and the same would go for the hat, although the hat is slightly different in that the company rents the uniforms to the employees or buys them for them the hat the employee buys himself if he chooses to use the hat as an optional item to his uniform. And she would be subject to cross examination as to whether that adornment is regulated or restricted or unrestricted. If I may, your honor, though, I'll give you one wrap-up point. Since you now have four minutes for the rebuttal, make your best point here. My best point. There have been several questions if we allow the decision to stand, what happens. And I think Judge Williams' point on the heavy burden that an employer would bear in a situation where it implemented for legitimate, lawful, nondiscriminatory reasons a uniform policy. Whether the individuals have contact with the public or not. If the individuals have contact with the public, you're in a better position to establish the so-called special circumstances test, although the board admonishes that mere contact with the public is not enough to establish special circumstances. If you don't have contact with the public, you could never have a dress code or uniform policy. You could never require that employees wear a particular piece of clothing without first establishing special circumstances. Well, you might have that if we're only talking about optional clothing. So the board might say, yes, you're right with respect to required uniforms, but this is not a required element. This is an optional element, and so the rule might be different for that. It might be, I mean, I think that the optional nature is frankly a red herring. The board consistently acknowledges that minimal limitation, minimal prescription on an employee's ability to wear union insignia or to communicate union views in the workplace is proper. Here, the company has said, if you choose to wear a hat, you don't have to wear a hat. There's no prescription on language on the hat, and so the optional nature of the hat actually falls right into board law that we're permitted, if necessary, in order to match the hat with the uniform, to prescribe replacing the hat with a union hat. If we went further, no pins, no buttons, no adornment, no writing on the hat, if we went further, now we have a problem because we're severely limiting employee communication and speech regarding union sympathies in the workplace, but again, that's not the issue presented to the court. The issue presented to the court is the narrow way that the cap policy is written, and the narrow way that the cap policy is written. Any other questions? All right, thank you very much. We'll take this matter under submission and call the next case.
judges: Garland, Wilkins, Williams